IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NATHAN KEVIN TURNER,

    Plaintiff,                      No. 2:09-cv-00632 GEB DAD P

    vs.

KATHLINE DICKINSON, et al.,        ORDER AND

    Defendants.               FINDINGS & RECOMMENDATIONS

        Plaintiff is a state prisoner proceeding pro se with an amended civil rights complaint pursuant to 42 U.S.C. § 1983. Before the court is defendant Rohrer's motion for summary judgment. Plaintiff has filed an opposition to the motion.[1] Defendant has filed a reply.

**BACKGROUND**

        Plaintiff is proceeding on his amended complaint filed in this action on January 6, 2010. (Doc. No. 12.) Although plaintiff named three defendants in his amended complaint, the

---

[1] Plaintiff filed his opposition on December 28, 2012. (Doc. No. 50.) However, because the court was inadvertently unaware of that filing, on January 3, 2013, the court ordered plaintiff to file an opposition, or in the alternative, to advise the court that he no longer wishes to proceed with this action. (Doc. No. 49.) Subsequently, plaintiff filed two requests for an extension of time to file his opposition and on January 17, 2013, filed a copy of his December 28 opposition (Doc. No. 56). Plaintiff's requests for extension of time will be denied as unnecessary. The opposition timely filed by plaintiff on December 28, 2012 is deemed his operative opposition to defendant's motion for summary judgment.

1

undersigned determined that plaintiff had stated a cognizable claim solely against defendant Dr. Jason Rohrer. (Doc. No. 14 at 2.)

In findings and recommendations filed on December 14, 2011, the undersigned recommended that the second cause of action of plaintiff's amended complaint be dismissed as duplicative, that plaintiff's third, fourth and fifth causes of action be dismissed for failure to state a cognizable claim and that this action proceed solely on plaintiff's first cause of action against defendant Dr. Rohrer in which plaintiff alleged that he had received inadequate medical care in violation of his rights under the Eighth Amendment. (Doc. No. 33.) Those findings and recommendations were adopted by the assigned District Judge on January 26, 2012. (Doc. No. 34.)

In his amended complaint, plaintiff claims that he received constitutionally inadequate medical care for his left shoulder and right knee. (Doc. No. 12, Attach. Am. Compl. at 4-5.) Specifically, he alleges that defendant Dr. Rohrer failed to refer him to an orthopedic specialist, failed to submit physicians orders and failed to provide appropriate medical care for his serious medical conditions. (Id.) Plaintiff also alleges that he was transferred without regard to his medical condition. (Id. at 5-6.)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On October 21, 2010, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure (Doc. No. 16). See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). In addition, with his motion for summary judgment, defendant also provided plaintiff with the notice required by Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), Rand and Klingele.

## OTHER APPLICABLE LEGAL STANDARDS

**I. Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**II. Eighth Amendment and Claims of Adequate Medical Care**

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need

and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). See also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in

providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). See also McGuckin, 974 F.2d at 1060.

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a given medical condition do not give rise to a cognizable § 1983 claim. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**DEFENDANT ROHRER'S MOTION FOR SUMMARY JUDGMENT**

**I. Defendant's Arguments**

Defendant Dr. Rohrer provides a separate statement of undisputed facts which is supported by reference to plaintiff's amended complaint, plaintiff's responses to defendant's request for admissions, defendant's own declaration with attached medical records, the declaration of Annette Valencia, and plaintiff's deposition testimony. (Doc. No. 42-3.)

In his memorandum of points and authorities, defendant Dr. Rohrer argues that he was not deliberately indifferent to plaintiff's medical needs, that he provided appropriate medical care to plaintiff which included referring plaintiff to an orthopedic specialist, that he was unaware of plaintiff's recommended transfer but that a medical hold was not warranted, and that, in any event, he is entitled to qualified immunity.[2]

---

[2] Because the court is able to resolve defendant's motion for summary judgment on the merits, defendant's alternate argument for summary judgment on qualified immunity grounds need not be addressed.

7

A. Medical Care Provided and Referral to Orthopedist

Defendant Dr. Rohrer asserts that: for the six months he was plaintiff's primary care provider at California State Prison-Solano (CSP-Solano); he ordered MRI studies of plaintiff's left shoulder and both knees; referred plaintiff to an orthopedic specialist and physical therapy; wrote orders that plaintiff receive pain medication; and issued chronos for plaintiff to have a cane, soft shoes and a lower bunk assignment. (Doc. No. 42-2 at 12.)

In his declaration, defendant Dr. Rohrer provides specific details about the various appointments and medical procedures plaintiff received. (Doc. No. 42-4.) He has also attached thereto medical and other records in support his declaration. (Id.) The following is a summary of the medical care provided to plaintiff according to defendant Dr. Rohrer's declaration.

Defendant was plaintiff's primary care provider between February 25, 2004 to August 25, 2004 while plaintiff was housed at CSP-Solano. (Id. ¶ 2 at 1.)

On February 25, 2004, defendant saw plaintiff in the medical clinic as part of the new inmate intake process. (Id. ¶3 at 2 & 9-10.) Plaintiff had been transferred to CSP-Solano from High Desert State Prison. (Doc. No. 42-5, ¶ 4 at 3.) Defendant noted that plaintiff had a history of right knee pain but plaintiff did not voice a concern about his left shoulder at that time. (Doc. No. 42-4, ¶3 at 2 & 9-10.) Defendant wrote an order to continue plaintiff on his then-current medications. (Id.)

On March 17, 2004, plaintiff was seen in the medical clinic as a walk-in patient with complaints that his left arm "'went out'" while he was walking to the library. (Id., ¶4 at 2 & 12-13.) Plaintiff was seen by Dr. Naku at that time who found no fracture or dislocation and recommended conservative treatment. (Id.) On that same day, an x-ray was taken and the radiology report included the following conclusions:

> 1. No evidence for acute injury is seen but double density is seen in the inferior lip of the glenoid. I cannot exclude a Bankhart type of injury.

/////

       2.  If further imaging is indicated for continued pain, shoulder MRI is suggested.

(Id. at 15.)

On April 2, 2004, defendant Dr. Rohrer interviewed plaintiff concerning his ADA reasonable accommodation appeal.  (Id. ¶6 at 2 & 17.)  A routine referral was made for physical therapy and a referral to send plaintiff to an orthopedic specialist for examination of his right knee was also issued at that time.  (Id. ¶6 at 3 & 19-20.)  Defendant Dr. Rohrer explains that the scheduling unit arranges the outside appointments with specialists and that although he makes the referral, he has no control over the scheduling of appointments with the specialists.  (Id. ¶ 6 at 3 & 19-20.)  He also declares that at his April 2, 2004 appointment, plaintiff did not voice any concerns about his left shoulder.  (Id.)

On April 27, 2004, defendant Dr. Rohrer saw plaintiff for a follow-up appointment regarding his right knee pain.  (Id. ¶7 at 3 & 22.)  Defendant ordered an MRI of the right knee and issued a medical chrono declaring plaintiff mobility-impaired due to his chronic back pain and right knee pain.  (Id. & 22-23 & 25.)  He also recommended that plaintiff receive a lower bunk assignment, cane, soft shoes and light duty.  (Id.)  Defendant Dr. Rohrer contends that at that appointment as well plaintiff failed to voice any concerns about his left shoulder.  (Id. ¶7 at 3.)

On May 25, 2004, defendant Dr. Rohrer saw plaintiff for a follow-up appointment regarding plaintiff's back and right knee pain.  (Id. ¶8 at 3 & 27-28.)  Defendant contacted the scheduling unit and was informed that the orthopedic consultation was approved and still pending an appointment.  (Id. ¶8 at 3 & 27.)  A repeat MRI was ordered at that time and defendant pain wrote orders for lab work and pain medication, and ordered a follow-up appointment for plaintiff in 90-days.  (Id. ¶ 8 at 4 & 27.)  Defendant contends that plaintiff again did not mention any issues with his left shoulder at that time.  (Id. ¶8 at 4.)

/////

1  On May 28, 2004, an MRI was taken for plaintiff's right knee. (Id. ¶9 at 4 & 30.) The MRI showed a possible tear or post surgical defect. (Id.)

On June 16, 2004, plaintiff received physical therapy treatment and was provided a home exercise plan. (Id. ¶ 10 at 4 & 32-33.)

On July 7, 2004, plaintiff was seen for a follow-up regarding his right knee MRI results. (Id. ¶11 at 4 & 35-36.) Plaintiff voiced concerns at that time about experiencing left shoulder pain. (Id.) Defendant Dr. Rohrer contacted the scheduling unit and noted that the orthopedic appointment for plaintiff's knee was still pending. (Id.) At that time defendant ordered an increase in pain medication and an MRI for plaintiff's left shoulder. (Id.)

On August 6, 2004, plaintiff underwent an MRI of his left shoulder. (Id. ¶12 at 4 & 38.) The findings were consistent with tendonitis or partial tear of the supraspinatus tendon and AC joint degenerative change. (Id.)

On August 10, 2004, defendant Dr. Rohrer saw plaintiff for his complaints of left knee pain. (Id. ¶13 at 5 & 40-41.) Defendant informed plaintiff about the MRI results on his left shoulder and based on the results, defendant Dr. Rohrer did not recommend surgery. (Id. ¶13 at 5.) Defendant wrote orders for an x-ray of plaintiff's left knee, refilled plaintiff's medications and ordered a follow-up appointment in 60 days. (Id. & 40-41.) This was the last time defendant Dr. Rohrer saw plaintiff. (Id. ¶ 13 at 5.)

On August 19, 2004, an MRI was performed on plaintiff's left knee. (Id. ¶14 at 5.) That MRI revealed mild osteoarthritis. (Id. & 43.)

Based on this treatment history, defendant Dr. Rohrer contends that he was not deliberately indifferent to plaintiff's serious medical needs. (Doc. No. 42-2 at 11.) As to plaintiff's knee, defendant asserts that he made a referral for plaintiff to see an orthopedic specialist and that he also called the scheduling unit on multiple occasions to check on the status of that referral. (Id. at 12.) Defendant argues that the fact that plaintiff was transferred to a different institution before he was able to see the orthopedic specialist is not evidence that he,

10

defendant Dr. Rohrer, acted with deliberate indifference. (Id.) As for plaintiff's shoulder, defendant Dr. Rohrer contends that the x-ray and MRI which plaintiff received did not show a definite tear and did not require an urgent consultation with an orthopedic specialist or surgery. (Id. at 11-12; Doc. No. 42-4 ¶15 at 6.)

B. Failure to Obtain a Medical Hold

Defendant Dr. Rohrer also states that he did not know that plaintiff was being transferred from CSP-Solano nor did plaintiff inform him about his potential transfer to a different institution. (Doc. 42-4, ¶16 at 5.) Defendant also explains that a medical hold may be used "when an inmate requires medically necessary health care services which would be medically prudent to occur at the CDC institution where the inmate is housed." (Id. ¶ 15 at 5.) According to defendant Dr. Rohrer, this process begins when the Utilization Management Nurse notifies the primary care physician and/or chief medical officer that a medical hold should be used because a scheduled appointment has been marked as "Urgent," or the inmate has "major medical procedures, temporary medical inability . . . to transfer, or an in-progress involuntary medication or competency determination process." (Id.) Defendant asserts that he was never contacted by the Utilization Management Nurse and that, in any event, in his professional opinion plaintiff did not qualify for such a medical hold. (Id. ¶16 at 5-6.) Defendant argues that "a routine consultation with an orthopedist does not qualify for a medical hold." (Doc. No. 42-2 at 11.) According to defendant, a medical hold is used in special circumstances so as not to interfere with custody decisions. Here, plaintiff was transferred to another institution because plaintiff was re-classified as level IV inmate and CSP-Solano cannot house level IV inmates for security reasons. (Id. at 12.) Plaintiff's increased classification level occurred because he received a serious rules violation at CSP-Solano. (Doc. No. 42-5 at 3.) Accordingly, plaintiff was transferred to California Correctional Institution on August 25, 2004. (Id. at 4.)

/////

/////

**II. Plaintiff's Opposition**

In his opposition to the pending motion for summary judgment, plaintiff makes broad and vague assertions about the poor medical care he allegedly received at CSP-Solano. As best as the court can determine, it appears that plaintiff is arguing that by April of 2004, defendant Dr. Rohrer was aware of plaintiff's right knee and left shoulder problems yet defendant failed to make an urgent referral on plaintiff's behalf for a consultation with an orthopedic specialist "for corrective treatment[.]" (Doc. No. 50 at 3-4.)

Plaintiff also asserts that defendant Dr. Rohrer should have submitted the necessary papers for a medical hold to delay plaintiff's transfer to CCI and to other subsequent institutions. (Id. at 5.) Although plaintiff conceded during his deposition that he did not have any conversations with defendant Dr. Rohrer about his impending transfer from CSP-Solano, plaintiff now asserts that in this regard he did not provide "the total answer" at his deposition. (Id.) Plaintiff now seeks to explain that he "posibly [sic]" had a conversation with defendant and also that he "is positive that he had some form of conversation with Rohrer about him not being transferred before he could have his serious medical issues resolved." (Id.)

Plaintiff argues that although defendant Dr. Rohrer was aware of plaintiff's "injury," from February 2004 to August 2004, defendant failed to follow-up "'to determine the extent of injury and what further medical attention he required.'" (Id. at 8.) Plaintiff alleges that although defendant Dr. Rohrer made an orthopedic referral, plaintiff never was seen by an orthopedic surgeon. (Id.) According to plaintiff, despite the "long delay in plaintiff's treatment, he [defendant] remained indifferent to plaintiff's condition and did nothing to expedite the long overdue diagnostic testing." (Id. at 9.) Plaintiff contends that defendant Dr. Rohrer also delayed or denied him mobility-related accommodations. (Id. at 10.) Finally, plaintiff contends that when the defendant first examined plaintiff, plaintiff told Dr. Rohrer about his shoulder and knee pain. (Id. at 10)

/////

1  Plaintiff argues that summary judgment in favor of defendant Dr. Rohrer is
2  precluded here because there is contradictory evidence about "what medical care was used[,]
3  when it was used, and why it was used." (Id. at 11.)

**III. Defendant's Reply**

Defendant Dr. Rohrer argues that plaintiff has failed to comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 260 by failing to admit or deny defendant's itemized facts in his Statement of Undisputed Facts and when plaintiff failed to object or cite to any evidence in support of his claims against defendant.[3] (Doc. No. 53 at 2.) Defendant also contends that there is no evidence before the court on summary judgment showing that plaintiff suffered from a serious medical condition and that he, defendant Dr. Rohrer, acted with deliberate indifference in response to any serious medical need of plaintiff. (Id. at 2-3.) As to plaintiff's allegation that he failed to provide a referral to an orthopedist, defendant Dr. Rohrer points out that the evidence establishes that he referred plaintiff to an orthopedist and to physical therapy on April 2, 2004. (Id. at 3.)

As to plaintiff's claim that he failed to follow-up or expedite his "'overdue diagnostic testing,'" defendant Dr. Rohrer refers to his declaration in which he explains that his standard practice was to contact the scheduling unit regarding such referrals. (Id.) Defendant points to the evidence before the court which establishes that he saw plaintiff on May 25, 2004 and July 7, 2004 and contacted the scheduling unit regarding plaintiff's orthopedic consultation. (Id.) Defendant notes that plaintiff was informed on both occasions that the orthopedic consultation had been approved and that he was pending an appointment. (Id.) Thus, defendant Dr. Rohrer argues that there is no evidence before the court on summary judgment suggesting deliberate indifference on his part because he not only issued the requested referral but he also diligently followed up on the status of that orthopedic referral. (Id.)

---

[3] Plaintiff's statement of disputed and undisputed facts is submitted with plaintiff's opposition to defendant's motion for summary judgment. (See Doc. No. 50 at 19.)

13

As to plaintiff's allegation that he failed to provide him with timely and appropriate medical care, defendant Dr. Rohrer argues that plaintiff has failed to come forward with any evidence showing deliberate indifference on his part. (Id. at 3-4.) Defendant again points out that the evidence establishes that he made a referral for plaintiff to see an orthopedist and checked on the status of the referral, he ordered imaging studies of plaintiff's left shoulder and both knees, he prescribed plaintiff pain medication, and he provided appropriate treatment of plaintiff's medical conditions. (Id. at 4.)

Defendant Dr. Rohrer argues that plaintiff failed to support his opposition with any evidence other than his unsigned, self-serving declaration and copies of his medical records. (Id.) Defendant also argues that plaintiff cannot create a triable issue of fact by disavowing his own deposition testimony. (Id.) Defendant Dr. Rohrer notes that at his deposition plaintiff testified that he never told defendant about his possible transfer from CSP-Solano and yet now in his opposition to summary judgment he attempts to recant that sworn testimony. Defendant contends that even in his attempted recantation plaintiff fails to provide any specific information about when he discussed his possible transfer with defendant. (Id. at 5.) Relying on Ninth Circuit authority, defendant Dr. Rohrer argues that plaintiff cannot create a disputed issue of material fact by way of an affidavit contradicting his prior sworn testimony. (Id.)

## ANALYSIS

Based on the evidence presented by the parties on summary judgment, the undersigned finds that a reasonable juror could not conclude that defendant Dr. Rohrer violated plaintiff's right to constitutionally adequate medical care as guaranteed by the Eighth Amendment. The evidence presented by defendant in moving for summary judgment belies any claim that he was deliberately indifferent to plaintiff's medical care. Rather, that evidence establishes that each time plaintiff was seen, defendant Dr. Rohrer was responsive to plaintiff's medical needs. At those appointments, defendant reviewed plaintiff's treatment, prescribed him pain medications, ordered diagnostic tests, and on April 2, 2004, made a referral for plaintiff to

see an orthopedic specialist for his knee problem.  Once that referral to a specialist was made and approved, defendant Dr. Rohrer continued to check on the status of the referral.  As defendant explains, and plaintiff does not dispute, defendant Dr. Rohrer had no control over the scheduling of plaintiff's appointment with the specialist once he made the referral.  As to plaintiff's assertion that an urgent referral should have been made, plaintiff has come forward with no evidence that his orthopedic condition presented an emergency that required more than a routine outside referral.  In any event, plaintiff's disagreement with defendant Dr. Rohrer's assessment in this regard amounts to no more than a difference of opinions between plaintiff and the defendant doctor regarding the appropriate medical care which fails to give rise to a cognizable Eighth Amendment claim.  See Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at 1344.

        Defendant Dr. Rohrer argues, and the medical records in evidence on summary judgment confirm, that plaintiff did not complain to defendant about his left shoulder until his July 7, 2004 appointment.  Although plaintiff first medical appointment for his left shoulder was on March 17, 2004, plaintiff was not seen by defendant at that time.  Instead, the evidence establishes that Dr. Naku examined plaintiff and ordered an x-ray at that time.  That x-ray noted no evidence of acute injury and it was recommended that an MRI be done if plaintiff's shoulder pain continued.  On July 7, 2004, the first time plaintiff complained to defendant about his shoulder pain, defendant Dr. Rohrer ordered an MRI of plaintiff's left shoulder.  On August 10, 2004, defendant Dr. Rohrer's last appointment with plaintiff, plaintiff was fully informed about the MRI results with respect to his shoulder.  That MRI indicated tendonitis or a partial tear and joint degenerative change.  Based on this diagnostic information, defendant Dr. Rohrer believed that neither an urgent referral to an orthopedist nor immediate surgery on plaintiff's left shoulder were called for.

        The court finds nothing in the evidence submitted on summary judgment to show that defendant Dr. Rohrer's medical care with respect to plaintiff's shoulder condition was

inadequate or that defendant was deliberately indifferent to plaintiff's shoulder in the way he provided medical treatment. Rather, the court finds that defendant has borne the initial burden of demonstrating that he provided constitutionally adequate treatment for plaintiff's left shoulder condition. The burden shifts to plaintiff to point to evidence indicating otherwise. Plaintiff has simply failed to come forward with any evidence establishing the existence of a genuine issue of disputed material fact as to whether defendant was deliberately indifferent in response to plaintiff's shoulder condition.

Plaintiff's allegations that defendant Dr. Rohrer denied or delayed him mobility-related accommodations is also unsupported by the evidence of record before the court on summary judgment. Defendant has attached medical and other records which show that on April 27, 2004, he requested that plaintiff be provided accommodations in the form of a cane, soft shoes, a lower bunk assignment and that he be placed on light duty. Thus, defendant Dr. Rohrer has again carried his initial burden by presenting evidence that the care he provided was constitutionally adequate and did not indicate deliberate indifference on his part. In response, plaintiff has failed to present any evidence establishing the existence of a genuine issue of material fact as to whether defendant denied or delayed accommodations for plaintiff's decreased mobility.

As to the claim that defendant Dr. Rohrer failed to request a medical hold to delay plaintiff's transfer to another institution, defendant has asserted that he was in fact unaware of plaintiff's impending transfer and that, in any event, in his professional opinion plaintiff did not qualify for or require such a medical hold in light of his medical condition. Although in opposing summary judgment plaintiff has attempted to create a factual dispute about whether he mentioned his possible transfer to defendant, the court finds that plaintiff's vague and speculative assertions are clearly insufficient to create a disputed fact with respect to defendant Dr. Rohrer's knowledge about plaintiff's possible transfer. In any event, even if this fact were legitimately in dispute, it would not be a dispute related to a material fact in light of the undisputed evidence

before the court establishing that plaintiff's knee and shoulder condition required neither urgent care or a medical hold.

As to plaintiff's knee condition there is nothing in the evidence before the court suggesting that the orthopedic consultation for plaintiff's knee, that defendant Dr. Rohrer had made the referral for, could only be obtained if plaintiff remained at CSP-Solano. In fact, plaintiff's own exhibits reflect that after plaintiff was transferred, he continued to receive medical care for his knee and that on March 24, 2005, arthroscopic surgery was performed on his right knee. (Doc. No. 50 at 43-44.)

As to plaintiff's shoulder, defendant Dr. Rohrer has presented medical evidence that plaintiff's condition did not warrant an urgent referral to an orthopedist nor did it require immediate surgery. Again, plaintiff's own exhibits supports the defendant's assessment in that they reflect that conservative treatment of his shoulder continued and surgery on his shoulder was not performed until four years after his transfer from CSP-Solano. (See Doc. No. 50 at 83-84.) In short, plaintiff has failed to come forward with any evidence suggesting that defendant Dr. Rohrer's medical treatment of his shoulder condition was constitutionally deficient at the time that care was rendered. Therefore, the court finds that plaintiff has not established the existence of a disputed issue of material fact as to either the necessity for a medical hold or defendant's failure to request such a medical hold.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's January 17, 2013 and January 31, 2013 requests for an extension of time to file his opposition to defendant's motion for summary judgment (Doc. Nos. 55 & 62) are denied as unnecessary.

Also, IT IS HEREBY RECOMMENDED that:

1. Defendant Dr. Rohrer's August 16, 2012 motion for summary judgment (Doc. No. 42) be granted; and

      2. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  <u>No reply shall be filed unless the court issues an order requiring a party to file a reply.</u>  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 1, 2013.

                                                        */s/ Dale A. Drozd*
                                                      DALE A. DROZD
                                                      UNITED STATES MAGISTRATE JUDGE

DAD:4
turn632.msj